UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHAROD STEPHEN ETHERIDGE          CIVIL ACTION

VERSUS                            NO. 19-295

ROBERT TANNER, ET AL.             SECTION: "T"(1)

## REPORT AND RECOMMENDATION

Plaintiff, Sharod Stephen Etheridge, a Louisiana state prisoner, filed this *pro se* federal civil action pursuant to 42 U.S.C. § 1983. He sued numerous prison officials, some of whom are only partially identified. Specifically, he listed the following defendants in his complaint: Warden Robert Tanner; Warden Billy Anderson; Warden Beverly Kelly; Sergeant Jeffrey Rogers; Floyd Brooks; Colonel Crawford; Colonel Harrell; Sergeant J. Tynes; Sergeant Magee; Lieutenant Dillon;[1] "Herbut"; "Sale"; "Nick"; "Waskom"; "Phillup"; "Bowens"; and "Sistrunk." Plaintiff indicated that the defendants were being sued in both their official and individual capacities.[2]

In an attempt to clarify plaintiff's claims, the Court held a Spears hearing on May 3, 2019. See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of

---

[1] The complaint also refers to a "Cadet Dillion." At the Spears hearing held in this matter, plaintiff clarified that "Cadet Dillion" is the same person as Lieutenant Dillon.
[2] Rec. Doc. 7, p. 8.

a Fed. R. Civ. P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

Despite the Spears hearing, many of plaintiff's claims remained vague. Therefore, to better understand the context of his allegations and claims, the Court took the further step of ordering his records from the Elayn Hunt Correctional Center ("EHCC") and the Rayburn Correctional Center ("RCC"), the two facilities he referenced in his complaint and Spears hearing testimony. Those records, which were also provided to plaintiff for his use in this proceeding, have been filed into this federal record.[3]

Based on plaintiff's complaint, his Spears hearing testimony, and the prison records, the Court finds that he is making the following allegations in this lawsuit:

After sentencing in his state criminal trial, plaintiff was transferred to EHCC in St. Gabriel, Louisiana. While there, he was placed in disciplinary segregation based on an accusation that he intentionally caused a toilet to overflow, and he was kept in segregation too long. While in segregation, he was denied food, harassed, and denied a shower after having urine and feces thrown on him. Also while at EHCC, he was placed on the medication Vistaril. He felt that was improper, and the medication was eventually discontinued.

Plaintiff was then transferred to RCC in Angie, Louisiana, on May 9, 2017.[4] At the Spears hearing, plaintiff identified defendant "Sale" as the officer who transported him from EHCC to RCC. During the transfer, Sale kept plaintiff in handcuffs that were too tight and gave him shoes that had been sprayed with mace. Plaintiff also testified that he encountered defendant "Nick"

---

[3] Rec. Docs. 13 and 14.
[4] Rec. Doc. 7, p. 10.

during that first night at RCC. "Nick" was disrespectful and handcuffed plaintiff in a painful manner.

At RCC, plaintiff was confined on suicide watch from May through August of 2017. The conditions he endured during that period were unnecessarily punitive.[5]

From "sometime in May of 2017 up until about the 2nd week of December 2017 certain staff/guards began a horrifying pattern of physical abuse and sheer torment of Plaintiff during his stay on lockdown."[6] Specifically: (1) Sergeant J. Tynes started a rumor that plaintiff was a "rapist."[7] (2) Sergeant Tynes also "physically slammed [plaintiff's] body to the floor while [he] was in handcuff(s) and leg(s) restraints at one point."[8] (3) Sergeant Magee grabbed plaintiff's shackles "and yanked them in an upward motions causing [him] to fall and painfully injure [his] head and back area."[9] (4) Sergeant Jeffrey Rogers headbutted plaintiff, twisted his shoulders, slammed his body to the ground, and applied pressure to his ribs, chest, and back.[10] (5) Lieutenant Dillon sprayed plaintiff with a chemical agent.[11] (6) He was falsely charged with disciplinary

---

[5] Id. at pp. 10-11.

[6] Id. at p. 12.

[7] Id. Explaining that allegation at the Spears hearing, plaintiff stated that Tynes mentioned in front of other inmates that plaintiff had a prior sexual misdemeanor conviction involving an underaged dancer at a New Orleans East strip club. Plaintiff conceded that he was in fact convicted of such an offense. According to the online docket master from the Orleans Parish Criminal District Court, plaintiff was originally charged with felony carnal knowledge of a juvenile pursuant to La. Rev. Stat. Ann. § 14:80. However, on March 20, 2012, he was allowed to plead guilty to an amended charge of misdemeanor carnal knowledge of a juvenile pursuant to La. Rev. Stat. Ann. § 14:80.1. Under Louisiana law, "Misdemeanor carnal knowledge of a juvenile is committed when a person who is seventeen years of age or older has sexual intercourse, with consent, with a person who is thirteen years of age or older but less than seventeen years of age, when the victim is not the spouse of the offender, and when the difference between the age of the victim and age of the offender is greater than two years, but less than four years." La. Rev. Stat. Ann. § 14:80.1(A).

[8] Rec. Doc. 7, p. 12. It appears that plaintiff is referring to the incident documented in a disciplinary report dated September 21, 2017. Rec. Doc. 14-1, p. 33.

[9] Rec. Doc. 7, p. 12. Again, it appears that plaintiff is referring to the same incident documented in the disciplinary report dated September 21, 2017. Rec. Doc. 14-1, p. 33.

[10] Rec. Doc. 7, pp. 12-13. It appears that plaintiff is referring to the incident documented in a disciplinary report dated June 25, 2017. Rec. Doc. 14-1, p. 19.

[11] The complaint appears to indicate that plaintiff was sprayed with the chemical agent by Sergeant Jeffery Rogers, see Rec. Doc. 7, pp. 12-13; however, at the Spears hearing, plaintiff clarified that it was in fact Lieutenant Dillon who

infractions and not afforded an opportunity to refute the charges.[12]  (7)  At the Spears hearing, plaintiff testified that he was slammed to the floor by defendant "Waskom."[13]

At the Spears hearing, plaintiff testified that Floyd Brooks was an RCC social worker. Brooks would ask plaintiff questions and then use the information gained to continue his placement on suicide watch.

## I.  Screening Standards

Plaintiff filed this federal civil action *in forma pauperis*.[14]  Concerning such actions, federal law provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

In addition, because plaintiff is incarcerated, he is also subject to the screening provisions of 28 U.S.C. § 1915A.  That statute mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a

---

administered the spray.  Plaintiff's RCC disciplinary records confirm that Dillon sprayed plaintiff with the chemical agent on August 10, 2017.  Rec. Doc. 14-1, p. 28.
[12] Rec. Doc. 7, p. 13.
[13] It appears that plaintiff was referring to an incident that occurred November 18, 2017, involving a use of force by Lieutenant Jacob Waskom.  Rec. Doc. 14-1, p. 50.
[14] Rec. Docs. 5 and 6.

governmental entity." 28 U.S.C. § 1915A(a).  Regarding such lawsuits, federal law similarly requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  In determining whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted).  The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a

5

defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

## II.  Plaintiff's Claims

Plaintiff filed this lawsuit pursuant to 42 U.S.C. § 1983.  In pertinent part, that statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983.

Although broadly construing plaintiff's complaint,[15] the undersigned recommends that the complaint be dismissed for the following reasons as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking monetary relief from a defendant who is immune from such relief.

### A.  Time-Barred Claims

"Where it is clear from the face of a complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations, those claims are properly dismissed as frivolous.  Courts may raise the defense of limitations sua sponte in a § 1915 action."  Abston v. Federal Bureau of Prisons, 689 F. App'x 304, 304 (5th Cir. 2017) (citation, quotation marks, and brackets omitted).  That said, "[b]efore entering a sua sponte dismissal on limitations grounds, a

---

[15] The Court must liberally construe a *pro se* civil rights complaint.  See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

court must accord the parties fair notice and an opportunity to present their positions." Juarez v. Anderson, 598 F. App'x 297, 297 (5th Cir. 2015) (quotation marks omitted). By virtue of this Report and Recommendation, plaintiff is hereby placed on notice that the issue of prescription is being raised with respect to some of his claims for the following reasons and that he has the opportunity to respond in an objection to the United States District Judge. See Alexander v. Trump, 753 F. App'x 201, 208 (5th Cir. 2018) (noting that issuance of a Report and Recommendation adequately provides a plaintiff with notice of a Court's sua sponte invocation of a defense and an opportunity to respond), cert. denied, 139 S. Ct. 1200 (2019); Webster v. United States, Civ. Action No. 6:19-CV-00196, 2019 WL 2511167, at *1 (E.D. Tex. June 17, 2019).

The United States Fifth Circuit Court of Appeals has held:

> The statute of limitations for Section 1983 claims is "the forum state's personal-injury limitations period," which in Louisiana is one year. Jacobsen v. Osborne, 133 F.3d 315, 319 (5th Cir. 1998). "In applying the forum state's statute of limitations, the federal court should also give effect to any applicable tolling provisions." Gartrell v. Gaylor, 981 F.2d 254, 257 (5th Cir. 1993). However, federal law governs when a Section 1983 claim accrues. Jacobsen, 133 F.3d at 319. This court has stated that "[u]nder federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." Gartrell, 981 F.2d at 257. As a result, the limitations period begins "when the plaintiff is in possession of the 'critical facts that he has been hurt and who has inflicted the injury.'" Id. (quoting Lavellee v. Listi, 611 F.2d 1129, 1130 (5th Cir. 1980)).

Smith v. Regional Transit Authority, 827 F.3d 412, 421 (5th Cir. 2016).

Because plaintiff is a *pro se* prisoner, his complaint is "deemed filed as of the date that he duly submitted it to prison authorities for forwarding to the clerk of court." Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Although that date is not apparent from the record, it obviously

7

was no earlier than the date on which he signed the complaint, i.e. **December 28, 2018**.[16] See, e.g., Smith v. Tanner, Civ. Action No. 18-3719, 2018 WL 6204617, at *6 (E.D. La. Nov. 11, 2018), adopted, 2018 WL 6199974 (E.D. La. Nov. 27, 2018). Accordingly, the one-year statute of limitations would normally bar all claims that accrued before **December 28, 2017**.

Based on the allegations in plaintiff's complaint, it is clear that the following claims accrued prior to **December 28, 2017**:

1. All claims concerning his confinement at EHCC.[17] Necessarily, those claims are based on acts and omissions that occurred **no later than May 9, 2017**, the date plaintiff was transferred from EHCC.[18]

2. The claims against defendants "Sale" and "Nick." Those claims are based on events which occurred on **May 9, 2017**, the date plaintiff was transferred from EHCC to RCC.

3. The claims based on plaintiff's confinement on suicide watch at RCC from **May through August 2017**.

4. The claims against Sergeant J. Tynes, Sergeant Magee, Sergeant Jeffery Rogers, and Lieutenant Dillon, all of which were based on incidents that occurred from "**sometime in May of 2017 up until about the 2nd week of December 2017**."[19]

---

[16] Rec. Doc. 7, pp. 5 and 17.
[17] Because plaintiff's complaint was imprecise, he was asked at the Spears hearing whether he was asserting any claims which arose during his confinement at EHCC. He stated that he was in fact asserting such claims.
[18] See Rec. Doc. 7, p.10.
[19] Id. at pp. 12-13.

    5.      The claim that plaintiff was falsely charged with disciplinary infractions and not afforded an opportunity to refute the charges, which likewise occurred from "**sometime in May of 2017 up until about the 2nd week of December 2017**."[20]

    6.      The claim against defendant "Waskom," which was based on an incident that occurred on **November 18, 2017**.[21]

Because all of those claims accrued prior to **December 28, 2017**, they were prescribed at the time the instant complaint was filed on **December 28, 2018**, *unless* the one-year statute of limitations was tolled. As previously noted, the Court looks to the forum state's law to determine whether the limitations period was tolled. Smith, 827 F.3d at 421. Regarding Louisiana's laws on tolling, the United States Fifth Circuit Court of Appeals has explained:

> Under Louisiana law, the doctrine *of contra non valentem* suspends the running of prescription in "exceptional circumstances." Lapuyade v. Rawbar, Inc., 190 So. 3d 1214, 1220 (La. Ct. App. 2016). Louisiana courts apply the doctrine of *contra non valentem* in four situations:
>
>> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
>> (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
>> (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or
>> (4) where the cause of action is neither known nor reasonably known by the plaintiff even though plaintiff's ignorance is not induced by the defendant.
>
> Marin v. Exxon Mobil Corp., 48 So.3d 234, 245 (La. 2010).

LaShip, L.L.C. v. Hayward Baker, Inc., 680 F. App'x 317, 323 (5th Cir. 2017).

---

[20] Id.
[21] See Rec. Doc. 14-1, p. 50.

9

In the instant case, plaintiff has provided no reason, and the undersigned can conceive of no basis on which, the doctrine of *contra non valentem* might apply in this case. There is no legal cause that prevented the courts from taking cognizance of or acting on his action. There is no condition coupled with the connected proceeding that prevented plaintiff from acting in a timely manner. The defendants did nothing to prevent him from availing himself of his causes of action. The causes of action were known or reasonably knowable to him.

Moreover, out of an abundance of caution, the Court expressly notes that, because plaintiff was required to exhaust his administrative remedies before filing suit,[22] his limitations period would have been tolled while he had any administrative grievances pending.[23] See Harris v. Hegmann, 198 F.3d 153, 157-58 (5th Cir. 1999). However, plaintiff's records show that he filed *no administrative grievances whatsoever* while confined at either EHCC or RCC.[24] Therefore, no tolling on that basis is available. See, e.g., Davis v. Young, 624 F. App'x 203, 207 (5th Cir. 2015); Billiot v. Sullivan, Civ. Action No. 14-2748, 2015 WL 539723, at *3 n.7 (E.D. La. Feb. 9, 2015).

Accordingly, the foregoing claims were already prescribed at the time plaintiff filed this lawsuit on December 28, 2018, and they should therefore be dismissed as frivolous on that basis.

---

[22] See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").

[23] The applicable administrative grievance procedure is set forth in La. Admin. Code tit. 22, § 325(1).

[24] Rec. Doc. 13-1, p. 1 ("Please note that after a thorough investigation that it has been discovered that no grievances were filed at Elayn Hunt Correctional Center by the plaintiff. As such, he has no grievance records to produce."); Rec. Doc. 14-1, p. 3 ("Sharod Etheridge #547599 filed no ARPs while housed at this facility [Rayburn Correctional Center].").

### B.  Claims for Declaratory and Injunctive Relief

In the complaint, plaintiff indicated that he was seeking declaratory and injunctive relief with respect to the alleged constitutional violations he suffered at RCC.[25]  However, the United States Fifth Circuit Court of Appeals has repeatedly held that a prisoner's claims for declaratory and injunctive relief for violations that occurred at a specific facility are moot once he is no longer incarcerated at that facility. See, e.g., Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001). Because plaintiff is no longer incarcerated at RCC, his claims for declaratory and injunctive relief should be dismissed as moot.

### C.  Official-Capacity Claims for Monetary Damages

The United States Fifth Circuit Court of Appeals has held:

> The Eleventh Amendment bars a state's citizens from filing suit against the state or its agencies in federal courts. ...  By statute, Louisiana has refused any ... waiver of its Eleventh Amendment sovereign immunity regarding suits in federal court. See La.Rev.Stat.Ann. § 13:5106(A).
> Furthermore, Congress may only abrogate a state's Eleventh Amendment immunity by unequivocally expressing its intent to do so and by acting pursuant to a valid exercise of power.  We note that in enacting § 1983, Congress did not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States.

Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273, 280-81 (5th Cir. 2002) (citations and quotation marks omitted); Champagne v. Jefferson Parish Sheriff's Office, 188 F.3d 312, 313-14 (5th Cir. 1999).  "When the Eleventh Amendment applies, [federal] courts lack subject-matter jurisdiction over the claim."  Bryant v. Texas Department of Aging and Disability Services, 781 F.3d 764, 769 (5th Cir. 2015).

---

[25] Rec. Doc. 7, p. 15.

Additionally, "[a] suit against a state official in his official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment." Chaney v. Louisiana Work Force Commission, 560 F. App'x 417, 418 (5th Cir. 2014). All the defendants in this civil action are employees of the Louisiana Department of Public Safety and Corrections. Accordingly, the claims against them in their official capacities for monetary damages must be dismissed for lack of subject-matter jurisdiction pursuant to the Eleventh Amendment. See, e.g., Williams v. Thomas, 169 F. App'x 285, 286 (5th Cir. 2006); Brenckle v. MacFay, Civ. Action No. 17-13500, 2018 WL 3340382, at *1 (E.D. La. Apr. 2, 2018), adopted, 2018 WL 3329075 (E.D. La. July 6, 2018); Watson-Buisson v. Louque, Civ. Action No. 12-1871, 2013 WL 5236611, at *1 (E.D. La. Sept. 13, 2013).

### D. Individual-Capacity Claims for Monetary Damages
### Against Defendants Tanner, Anderson, Kelly, Crawford, and Harrell

In the complaint, plaintiff stated that he is seeking to hold Warden Robert Tanner, Warden Billy Anderson, Warden Beverly Kelly, Colonel Crawford, and Colonel Harrell "liable for the acts and omissions of their subordinates and also for fostering an attitude of acquiescence towards such reckless and pervasive conduct or for failing to stop the abuse of plaintiff and others before him."[26] Further, at the Spears hearing, plaintiff expressly testified that those defendants did not *personally* violate his rights.[27] That is fatal to the claims against them, because "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). That remains true even though those individuals hold supervisory positions at RCC,

---

[26] Rec. Doc. 7, p. 14.
[27] Plaintiff testified that those defendants "really reached out to me but they had the power and they can have made – they could have overturned decisions right away."

because "§ 1983 does not give a cause of action based on the conduct of subordinates." Id.; accord Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability."); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."). Accordingly, plaintiff's individual-capacity claims for monetary damages against Warden Robert Tanner, Warden Billy Anderson, Warden Beverly Kelly, Colonel Crawford, and Colonel Harrell should be dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be granted.

### E.  Individual-Capacity Claim for Monetary Damages Against Floyd Brooks

In the complaint, plaintiff listed Floyd Brooks as a defendant but made no allegations against him. When asked at the Spears hearing why Brooks was sued, plaintiff explained that Brooks was an RCC social worker who would ask him questions and then use the information gained to continue his placement on suicide watch.

Even accepting those allegations as true, the undersigned finds that there is no basis for holding Brooks liable. As an initial matter, the Court notes that plaintiff's records reflect that it was the prison *physician*, Dr. Cleveland, who normally issued the orders pertaining to suicide watch.[28] Nevertheless, even if the Court assumes that Brooks, a social worker, had the authority to countermand such orders, there is no basis for concluding that he violated plaintiff's constitutional rights by failing to do so.

Certainly, the mere fact that Brooks asked plaintiff questions while he was on suicide watch did not run afoul of any constitutional protections. Moreover, to the extent that plaintiff is alleging

---

[28] See, e.g., Rec. Doc. 14-1, pp. 36 and 39.

that Brooks used the information gained through the questioning to reach a conclusion that plaintiff should remain on suicide watch and inviting this Court to second-guess that medical decision regarding his mental health care, the Court should decline that invitation.

The Court first notes that it is unclear whether an inmate even has a constitutional right not to be placed on suicide watch without adequate cause. See Langlinais v. Nelson Coleman Correctional Center, Civ. Action No. 13-3003, 2015 WL 225222, at *6-7 (E.D. La. Jan. 15, 2015) ("[T]he Court simply cannot say that an inmate has a clearly established *constitutional right* not to be placed on suicide watch without probable cause. On the contrary, a number of cases have expressly found that there is no such constitutional right."); see also Jones v. Blackburn, No. 3:14-cv-01229, 2014 WL 2480601, at *6 (M.D. Tenn. June 2, 2014) ("There is no constitutional right to avoid being placed on suicide watch."); Hunter v. Williams, No. 3:13-cv-00592, 2013 WL 3467097, at *2 (M.D. Tenn. July 10, 2013) ("[B]ecause there is no liberty interest in assignment to any particular prison, or housing unit within a prison, the plaintiff has no due process claim for being placed on suicide watch."); Starks v. Couch, Civ. Action No. 08-cv-407, 2009 WL 331357, at *2 (S.D. Ill. Feb. 11, 2009) ("Starks has not stated a claim for a due process ... violation because there is no constitutional right to avoid being placed on suicide watch.").

Further, in any event, if the Court assumes for the purposes of this decision that such a right exists, it was not violated here. Based on his questioning of plaintiff, Brooks simply determined that plaintiff should remain on suicide watch. However, *even if Brooks was mistaken*, a mistaken determination does not subject him to liability for an alleged Eighth Amendment violation. On the contrary, as the United States Fifth Circuit Court of Appeals has explained:

> The Eighth Amendment's prohibition against cruel and unusual punishment bars the "unnecessary and wanton infliction of pain" on a prisoner, and a § 1983 cause

> of action asserting an Eighth Amendment violation for a lack of proper inmate medical care requires "deliberate indifference" to the prisoner's "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 101-05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (internal quotation marks and citations omitted). The "extremely high standard" of deliberate indifference requires that prison officials "refused to treat [the prisoner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Domino v. Tex. Dep't of Crim. Just., 239 F.3d 752, 756 (5th Cir. 2001) (internal quotation marks and citations omitted). *Allegations of unsuccessful medical treatment, negligence, neglect, medical malpractice, or a mistaken judgment do not amount to deliberate indifference to serious medical needs.* Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991). *"[T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment."* Domino, 239 F.3d at 756 (internal quotation marks and citation omitted).
>
> … As this court has explained, "[s]uicide is inherently difficult ... to predict, particularly in the depressing prison setting," and *an incorrect diagnosis regarding the genuineness of a suicide threat does not amount to deliberate indifference*. Domino, 239 F.3d at 754-56 (quote at 756).

Young v. McCain, 760 F. App'x 251, 256-57 (5th Cir. 2019) (emphasis added). That is especially true because the stakes are so high for both the inmate and the mental health professional, and it is natural (and permissible) for the mental health professional to err on the side of caution in such matters. Indeed, if Brooks had ignored his concerns, released plaintiff from suicide watch, and plaintiff had then committed suicide, Brooks might well have been liable for failing to take preventative measures. See, e.g., Lewis v. Parish of Terrebonne, 894 F.2d 142, 145-46 (5th Cir. 1990); Stewart v. Warner, Civ. Action No. 13-4759, 2014 WL 3498165, at *4 (E.D. La. July 15, 2014).

For all of these reasons, plaintiff's individual-capacity claim for monetary damages against Brooks should be dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be granted.

### F.  Individual-Capacity Claims for Monetary Damages Against Defendants "Herbut," "Phillup," "Bowens," and "Sistrunk"

"Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation.  This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted).  However, plaintiff has made no allegations whatsoever against defendants "Herbut," "Phillup," "Bowens," and "Sistrunk." Where, as here, a plaintiff has merely listed individuals as defendants but made no factual allegations against them, the plaintiff has failed to state a cognizable claim against those defendants.  See, e.g., Hall v. Peck, Civ. Action No. 16-13527, 2017 WL 745729, at *2 (E.D. La. Jan. 12, 2017), adopted, 2017 WL 788354 (E.D. La. Feb. 23, 2017); Reavis v. State of Louisiana, Civ. Action No. 16-1692, 2016 WL 3571440, at *3 (E.D. La. June 8, 2016), adopted, 2016 WL 3524139 (E.D. La. June 28, 2016); White v. Gusman, Civ. Action No. 14-2131, 2014 WL 6065617, at *2 (E.D. La. Nov. 12, 2014).  Accordingly, plaintiff's individual-capacity claims for monetary damages against "Herbut," "Phillup," "Bowens," and "Sistrunk" should be dismissed for failure to state a claim on which relief may be granted.

### RECOMMENDATION

It is therefore **RECOMMENDED** plaintiff's claims based on acts or omissions during plaintiff's confinement at the Elayn Hunt Correctional Center be **DISMISSED WITH PREJUDICE** as frivolous because they were prescribed at the time the complaint was filed.

It is **FURTHER RECOMMENDED** that plaintiff's claims against defendants "Sale" and "Nick" be **DISMISSED WITH PREJUDICE** as frivolous because they were prescribed at the time the complaint was filed.

It is **FURTHER RECOMMENDED** that all of plaintiff's claims concerning his confinement on suicide watch from May through August in 2017 be **DISMISSED WITH PREJUDICE** as frivolous because they were prescribed at the time the complaint was filed.

It is **FURTHER RECOMMENDED** that plaintiff's claims against Sergeant J. Tynes, Sergeant Magee, Sergeant Jeffrey Rogers, and Lieutenant Dillon be **DISMISSED WITH PREJUDICE** as frivolous because they were prescribed at the time the complaint was filed.

It is **FURTHER RECOMMENDED** that plaintiff's claim that he was falsely charged with disciplinary infractions and not afforded an opportunity to refute the charges be **DISMISSED WITH PREJUDICE** as frivolous because it was prescribed at the time the complaint was filed.

It is **FURTHER RECOMMENDED** that plaintiff's claim against defendant "Waskom" be **DISMISSED WITH PREJUDICE** as frivolous because it was prescribed at the time the complaint was filed.

It is **FURTHER RECOMMENDED** that plaintiff's claims for declaratory and injunctive relief be **DISMISSED AS MOOT**.

It is **FURTHER RECOMMENDED** that plaintiff's official-capacity claims for monetary damages against all defendants be **DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION** pursuant to the Eleventh Amendment.

It is **FURTHER RECOMMENDED** that plaintiff's individual-capacity claims for monetary damages against Warden Robert Tanner, Warden Billy Anderson, Warden Beverly

Kelly, Colonel Crawford, and Colonel Harrell be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim on which relief may be granted.

It is **FURTHER RECOMMENDED** that plaintiff's individual-capacity claims for monetary damages against Floyd Brooks be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim on which relief may be granted.

It is **FURTHER RECOMMENDED** that plaintiff's individual-capacity claims for monetary damages against defendants "Herbut," "Phillup," "Bowens," and "Sistrunk" be **DISMISSED WITHOUT PREJUDICE** for failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[29]

New Orleans, Louisiana, this __19th__ day of September, 2019.

_Janis Van Meerveld_
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

---

[29] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.